# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § Case Number: 4:17-CR-00159 |
| v. | § Judge Mazzant |
| | § |
| SEYED NAHIDI (01) | § |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Seyed Nahid's Motion for Compassionate Release (Dkt. #56). The Court, having considered the Motion, the response, the record, and the applicable law, finds that the motion must be **DENIED**.

### I. BACKGROUND

On June 13, 2018, Defendant Seyed Nahidi ("Nahidi") pleaded guilty to Possession with the Intent to Distribute Methamphetamine, a violation of 18 U.S.C. § 841, and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, a violation of 18 U.S.C. § 924 (Dkt. # 31). The Court sentenced Nahidi to 106 months' imprisonment followed by a three-year term of supervised release (Dkt. # 52). Nahidi is serving his sentence at FCI Yazoo City Low with an anticipated release date of February 2, 2025 (Dkt. #56 at p. 2).

On April 8, 2022, Nahidi filed his motion for compassionate release (Dkt. #56). Nahidi seeks compassionate release based on allegations of a sentence disparity due to a change in the interpretation of presiding law (Dkt. #56). He further argues that the COVID-19 pandemic has caused undue hardship (Dkt. #56). Lastly, he argues that his record for rehabilitation weighs in his favor (Dkt. #56). The Government opposes the sentence reduction, arguing that the applicable law has not changed and that Nahidi has not demonstrated "extraordinary and compelling reasons" for a sentence reduction (Dkt. #59).

## II. LEGAL STANDARD

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A), the statute authorizing compassionate release. Under § 3582(c)(1)(A), a district court may grant a sentence reduction if it finds: (1) a defendant "fully exhausted all administrative rights"; (2) "extraordinary and compelling reasons warrant such a reduction"; (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (4) such a reduction is appropriate "after considering the factors set forth in § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The First Step Act of 2018 made the first major changes to compassionate release since its authorization in 1984. Pub. L. 115-391, 132 Stat. 5194. Procedurally, the First Step Act removed the Director of the BOP as the sole arbiter of compassionate release. Instead, the law enabled a defendant to move for compassionate release directly in district court after exhausting their administrative rights. 18 U.S.C. § 3582(c)(1)(A). Prior to this change, the BOP retained sole gatekeeping authority over compassionate release petitions. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020). This resulted in underuse and mismanagement.[1] *Id.* Through the First Step Act, Congress sought to mitigate this by "increasing the use and transparency of compassionate release." Pub. L. 115-391, 132 Stat. 5194, 5239 (capitalization omitted).

---

[1] In 2013, a report from the Office of the Inspector General revealed that the BOP granted compassionate release to only an average of 24 incarcerated people per year. *See* U.S. Dep't of Just. Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf (last visited April 14, 2020). And of the 208 people whose release requests were approved by both a warden and a BOP Regional Director, 13% died awaiting a final decision by the BOP Director. *Id.*; *see also Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 MD. L. REV. 850, 868 (2009) (noting that, in the 1990s, 0.01 percent of inmates annually were granted compassionate release).

Substantively, the First Step Act also modified the "extraordinary and compelling reasons" determination. Congress never defined what constitutes "extraordinary and compelling," but rather delegated this determination to the Sentencing Commission.[2] By the text of § 3582(c)(1)(A), any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." However, since passage of the First Step Act, the Sentencing Commission has not updated its guidelines on compassionate release.[3] This has created significant disagreement across the country whether the pre-First Step Act policy statement is still "applicable," and thus binding on district courts.

The Fifth Circuit recently joined the Second, Fourth, Sixth, Seventh, and Tenth Circuits in concluding that § 1B1.13 is no longer binding on a district court. *See United States v. Shkambi*, 2021 WL 1291609, at *4 (5th Cir. 2021) ("The district court on remand is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a). In reaching this conclusion, we align with every circuit court to have addressed the issue."). Under this new framework, § 1B1.13 still binds district courts on motions made by the BOP, but, for motions made directly by an inmate, district courts are free to consider any relevant fact in determining if "extraordinary and compelling reasons" exist. *See Brooker*, 976 F.3d at 235–36 (because the First Step Act allows both inmates and the BOP to file compassionate-release motions under § 3582(c)(1)(A), § 1B1.13 now applies only when such motions are made by the BOP and is inapplicable when a compassionate-release motion is made by a defendant); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) ("A sentence reduction brought about by motion of a defendant, rather than

---

[2] In 28 U.S.C. § 994(a)(2), Congress granted the Commission broad authority to promulgate "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in [18 U.S.C. § 3553(a)(2)]." And in 28 U.S.C. § 994(t), "Congress instructed the Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (quoting 28 U.S.C. § 994(t)).

[3] The Sentencing Commission currently lacks a quorum to issue new guidelines.

the BOP, is not a reduction 'under this policy statement.'"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with *Brooker* and holding that there is no "applicable" policy statement for § 3582(c)(1)(A) motions after the First Step Act); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release").

Despite this newfound discretion, district courts are not without guidance in determining whether "extraordinary and compelling reasons" exist. First, Congress has explicitly limited that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason. 28 U.S.C. § 994(t) (emphasis added). Second, the Sentencing Commission's policy statement and commentary is still persuasive. *United States v. Logan*, No. 97-CR-0099(3), 2021 WL 1221481 (D. Minn., Apr. 1, 2021) (finding that § 1B1.13's definition of "extraordinary and compelling" should be afforded "substantial deference . . . as such deference is consistent with the intent (even if not mandated by the letter) of § 3582(c)(1)(A)"). Application Note 1 of the policy statement provides that "extraordinary and compelling reasons" exist when: (1) a terminal illness or other medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility"; (2) a defendant, who is at least 65 years old, "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment"; and (3) a defendant has minor children without a caregiver or with an incapacitated spouse or partner who needs the defendant to be the caregiver. U.S.S.G. § 1B1.13, n.1(A)-(C). Lastly, BOP Program Statement 5050.50 ("PS 5050.50"), amended after passage of the First Step Act, describes the factors BOP considers grounds for compassionate release. *See* PS 5050.50 ¶¶ 3–6. These

grounds are similar to the reasons identified by the Sentencing Commission, but also include a list of factors like rehabilitation and circumstances of the offense.[4]  *Id.*

Building from this guidance, district courts across the country have identified additional situations where "extraordinary and compelling reasons" exist.  First, while rehabilitation alone is not an "extraordinary and compelling" reason for a sentence reduction, it can be a significant factor warranting a sentence reduction when an inmate has an otherwise qualifying condition.[5]  *See United States v. Rodriguez*, 451 F.Supp.3d 392, 405 (E.D. Pa. 2020) (noting that the Sentencing Commission itself interpreted § 3582(c)(1)(A) as allowing consideration of an inmate's rehabilitation).  If an inmate demonstrates a long, comprehensive record of rehabilitation, it goes to whether injustice would result if they remain incarcerated.  *See Brooker*, 976 F.3d at 238 (identifying "the injustice of [a] lengthy sentence" as a factor that may weigh in favor of a sentence reduction).  Second, courts consider any changes in law and the sentencing guidelines when determining if a sentence is extraordinary. For example, courts grant compassionate release at a remarkable rate for inmates subject to the now abolished § 924(c) sentence-stacking.  *See McCoy*, 981 F.3d at 285 ("As the court observed in Bryant, multiple district courts have concluded that the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an "extraordinary and compelling" reason for relief under § 3582(c)(1)(A)").  Though Congress did not retroactively eliminate § 924(c) sentence-stacking, courts consider whether the outdated policy warrants relief on a case

---

[4] PS 5050.50's nonexclusive factors are: "the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'" *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting PS 5050.50 ¶ 7).
[5] 18 U.S.C. § 3142(g) aids the Court in determining whether a defendant is a danger to the community.  Applicable factors include: "the nature and circumstances of the offense," "the person's character, physical and mental condition, family ties, employment, . . . criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

by -case basis-. *See id.*⁶

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .

(5) any pertinent [Sentencing Commission] policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

### III. DISCUSSION

Nahidi moves for a reduction of his sentence based on a sentence disparity due to a change in the interpretation of 18 U.S.C. § 924(c) (Dkt. #56, Exhibit 1). Further, Nahidi contends that hardship due to the lockdowns triggered by the COVID-19 pandemic serves as grounds for his

---

⁶ *See* Shon Hopwood, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 123-24 (2019) (arguing Congress did not make § 924(c) sentence stacking retroactive because it did not want to make all inmates "*categorically*" eligible for sentencing relief, but Congress meant for relief from draconian sentences to apply "*individually*")

release (Dkt. #56). Lastly, Nahidi claims that he has served a substantial portion of his sentence without incident and has obtained employment following his release, weighing in favor of his plea (Dkt. #56). In response, the Government argues Nahidi is not eligible for compassionate release because there has been no relevant change in law and Nahidi presents no "extraordinary or compelling" reason for a sentence reduction (Dkt. #59).

Although Nahidi has met § 3582(c)(1)(A)'s exhaustion requirement, he has not met the statute's requirement that "extraordinary and compelling reasons" exist warranting a reduction of his sentence. Nahidi's motion, therefore, must be denied.

### A. Nahidi Has Met Section 3582(c)(1)(A)'s Exhaustion Requirement.

Nahidi's compassionate release motion may only be considered if he first meets § 3582(c)(1)(A)'s exhaustion requirement. Courts may not consider a modification to a defendant's sentence under § 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the Director of the BOP or by a defendant who has fully exhausted their administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Fully exhausting administrative remedies requires a denial by the warden of a defendant's facility or waiting thirty days without receiving a response to a request.[7] *Id.*

Section 3582(c)(1)(A)'s exhaustion requirement is not waivable. *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule . . ."); *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020) ("While the Court is well aware of the effects the Covid-19

---

[7] BOP regulations define "warden" to include "the chief executive officer of . . . any federal penal or correctional institution or facility." 28 C.F.R. § 500.1(a); *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *c.f. United States v. Campagna*, 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (holding that "the denial of Defendant's request by the Residential Re-entry Manager suffices to exhaust his administrative rights").

pandemic . . . § 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse Reeves' failure to exhaust his administrative remedies or to waive the 30-day waiting period."). If a defendant has not sought relief from the BOP, or has not waited thirty days since seeking relief, the Court may not consider their motion.

On March 8, 2022, Nahidi asked the warden at FCI Yazoo City Low to grant his compassionate release (Dkt. #56-2 at p. 2). More than thirty days have passed since he made this request. Nahidi has, therefore, met § 3582(c)(1)(A)'s exhaustion requirement.

### B. Nahidi Has Not Met Section 3582(c)(1)(A)'s Requirement that "Extraordinary and Compelling Reasons" Warrant a Sentence Reduction.

Nahidi's claim for compassionate release turns on the assertions that a change in the interpretation of 18 U.S.C. § 924(c) resulted in a sentence disparity (Dkt. #56, Exhibit 1 at p. 1). Moreover, he claims the hardship of the COVID-19 pandemic and his rehabilitation as grounds for his release (Dkt. # 56, Exhibit 1 at pp. 2–3). Nahidi's claims fail because: (1) there is no sentence disparity from his conviction under § 924(c); (2) he has cited no extraordinary hardship from the COVID-19 pandemic; and (3) his rehabilitation is insufficient on its own to support his release.

The Court has discretion to decide whether Nahidi's conditions present "extraordinary and compelling reasons" warranting a sentence reduction. *See Shkambi,* 2021 WL 12916009, at *4. The Court is not bound by the Sentencing Commission's policy statement and may consider any relevant facts in evaluating Nahidi's condition of incarceration. *Id.* Typically, courts consider whether a defendant suffers from a serious health condition, has a record of rehabilitation, the nature and circumstances of defendant's offense, and whether a sentence is based on outdated law. *See Brooker*, 976 F.3d at 238.

### 1. Sentence Disparity

The Court may consider "the need to avoid unwarranted sentence disparities" when evaluating compassionate release. 18 U.S.C. § 3553(a)(6). Nahidi claims that, at the time of his sentencing, any violation under § 924(c) constituted a "crime of violence." However, he argues the Supreme Court has since overturned this automatic classification, thus resulting in a sentencing disparity here (Dkt. 56, Exhibit 1 at p. 1).

Section 924(c) acts as a sentence enhancement statute and increases a qualifying sentence when a defendant possesses a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). There is no statutory language to suggest that § 924(c), on its own, constitutes a crime of violence, nor is there legal precedent which holds it to be a crime of violence. Moreover, current precedent suggests that the mere possession of a gun would be insufficient to fit the statutory definition of a crime of violence under federal law, excluding § 924(c) from the classification. *See United States v Davis,* 139 S. Ct. 2319, 2331 (2019) (holding the definition of "a crime of violence" to be unconstitutionally vague if a charge might qualify "solely because the defendant used a firearm"); *see also Johnson v United States,* 576 U.S. 591, 623 (2015) (holding the definition of "violent felony" to be unconstitutionally vague when applied to the unlawful possession of a firearm).

While the Supreme Court has ruled as to the interpretation of "crime of violence" under § 924(c)(3)(B), the ruling only affects charges predicated on crimes of violence.[8] In the present case, the charge was based on a non-violent drug trafficking offense (Dkt. #52). As Nahidi's sentence arose from an unaffected predicate offense, the Supreme Court's decision is not

---

[8] While Nahidi does not specify which recent Supreme Court ruling he alludes to, it is likely that he refers to *United States v Davis*. In *Davis*, the Supreme Court held the residual clause defining a "crime of violence" under 18 U.S.C. § 924(c)(3)(B) to be "unconstitutionally vague." *See Davis,* 139 S. Ct. at 2334. However, as Nahidi's charge was decided on a different, unaltered qualifying offense, his sentence remains unaffected.

applicable here.  The Court therefore finds no disparity in his sentence.

### 2. COVID-19 Pandemic.

When considering if a defendant's health condition supports compassionate release, the mere existence of COVID-19 in society cannot independently justify a sentence reduction.  *See United States v. Miller*, No. 2:17-CR-015-D, 2020 WL 2514887, *2 (N.D. Tex. May 15, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).  For a defendant to be granted compassionate release based on COVID-19, defendant must have a serious comorbidity and evidence the facility is not effectively controlling the spread of the virus.  *See United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence.").

In the present case, Nahidi fails to cite any extraordinary condition related to the COVID-19 pandemic.  Nahidi claims no accompanying health condition that would put him at a greater risk than any other federal prisoner currently incarcerated.  Further, FCI Yazoo City Low only reports one current active COVID-19 case among staff and none among inmates, suggesting the present risk is a low one.  Federal Bureau of Prisons, *COVID-19 Cases,* https://www.bop.gov/coronavirus/ (last visited July 8, 2022).  Likewise, Nahidi's added hardship due to lockdown presents no difficulty that would set it apart from the hardship faced by any other inmate.  While the current restrictions are regrettable, Nahidi fails to present any extraordinary or compelling hardship.

### 3. Rehabilitation

Rehabilitation alone cannot support a claim for sentence reduction but may be considered

as a factor in evaluating "extraordinary and compelling reasons." *See Brooker*, 976 F.3d at 237–38; *United States v. Hudec*, No. 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 20, 2020). Here, Nahidi participated in available educational and vocational training during his incarceration (Dkt. 56, Exhibit 3 at p. 2). He also claims to have secured full-time employment to begin upon his release, and he has maintained contact with his family to facilitate his gainful return to society (Dkt. 56, Exhibit 2 at p. 2). While commendable, absent any other extraordinary or compelling reason, his rehabilitation alone cannot support a claim for sentence reduction.

\*       \*       \*

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at 819 (same). Compassionate release is one of those exceptions, but a defendant must conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence. Because Nahidi has failed to meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i), his Motion must be denied.

### IV. CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Compassionate Release (Dkt. #56) is **DENIED**.

**SIGNED** this 11th day of July, 2022.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE